# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

KATHALEEN ST. JUDE
MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 22, 2022

Elizabeth Wilburn Joyce
Megan Ix Brison
Pinckney, Weidinger, Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, DE 19806

"J" Jackson Shrum
Jack Shrum, P.A.
919 N. Market Street, Suite 1410
Wilmington, DE 19801

Re:     *Paul Elton, LLC v. Rommel Delaware, LLC et al.*,
          C.A. No. 2019-0750-KSJM

Dear Counsel:

Defendants Rommel Delaware, LLC, Rommel Motorsports Delaware, Inc., and

David Rommel (together, "Defendants") have moved pursuant to Court of Chancery Rules

59(e), 59(f), and/or 60(b) for reargument of the court's letter opinion dated August 3, 2022,

to reopen discovery, or, in the alternative, to complete a new appraisal of the 2.5 acres of

Additional Space at issue.[1]  Plaintiff has opposed these motions and moved for fee-

shifting.[2]  For the reasons that follow, the motions for reargument and to reopen discovery

are denied, but Defendants' alternative request for leave to complete a new appraisal of the

2.5 acres of Additional Space is granted.  Plaintiff's request for fee-shifting is denied.

---

[1] C.A. No. 2019-0750-KSJM, Docket ("Dkt.") 102 ("Defs.' Mot. for Reconsideration and to Reopen Disc."); *see also* Dkt. 101 ("Aug. 3, 2022 Letter Op.").  Defined terms used in this letter have the meaning ascribed to them in the court's order dated December 30, 2021, granting Plaintiff's motion for partial summary judgment.  *See* Dkt. 77 ("Dec. 30, 2021 Order").

[2] Dkt. 104 ("Pl.'s Opposition") at 1, 13–14.

By way of background, on December 30, 2021, I issued an order finding Defendants liable on summary judgment for breach of Plaintiff's Proceeds Right arising out of several agreements between the parties.[3] As relief, I ordered Defendants to specifically perform their obligation to participate in the Appraisal Process.[4]

A dispute arose during the Appraisal Process. The Purchase Agreement provides that if the parties cannot agree on the value of the Additional Space after a sale, they shall each "select an appraiser to complete an appraisal of the value of the lease of the Additional Space."[5] If the two appraisals are less than 5% divergent in value, "then the average of the two appraisals shall be the price."[6] If the two appraisals are more than 5% divergent, however, "then the two appraisers shall . . . select a third appraiser and the average of the two closest appraisals shall be" the value of the Additional Space.[7] The parties selected their respective appraisers and obtained appraisals, but the appraisal were more than 5% divergent.[8] Plaintiff's appraiser valued the Additional Space at $5.6 million,[9] and Defendants' appraiser valued the Additional Space at $1.74 million.[10]

---

[3] Dec. 30, 2021 Order ¶¶ 12–13, 15–16, 32.

[4] *Id.* ¶ 32.

[5] Dkt. 91 ("Defs.' Mot."), Ex. A (Purchase Agreement) § 4.

[6] *Id.*

[7] *Id.*

[8] Dkt. 83 ¶¶ 1–2; Dkt. 84; Dkt. 85; Dkt. 87; Dkt. 88.

[9] Dkt. 92 ("Pl.'s Mot."), Ex. B ("Pl.'s Appraisal") at 2.

[10] Pl.'s Mot., Ex. A ("Defs.' Appraisal") at 11.

Part of the discrepancy in appraisal values derived from the appraisers' different understandings of the term "Additional Space," defined in the Purchase Agreement as "additional space on the Property which is not required for the operations of the primary tenant of the Property."[11] To identify the Additional Space on the 5.75-acre lot, Plaintiff's appraiser reviewed "[t]he land development application for the proposed Royal Farms site [that] was submitted to the New Castle County Planning Department in August 2017 and the final plan [that] was recorded on June 28, 2018, subsequent to the retrospective date of value."[12] Based on these site plans, Plaintiff's appraiser found that 3.25 acres of the Property supported "the existing improvements," including the former Harley-Davidson dealership, while the remaining 2.5 acres supported "the proposed Royal Farms improvements."[13] Plaintiff's appraiser thus identified the 2.5 acres as the Additional Space subject to appraisal.

Defendants' appraiser relied instead on an August 9, 2010 plat of the property entitled "Paul Elton LLC, 2160 New Castle Avenue" showing "the majority of the property in support of the existing dealership building and its site improvements, with a" 1.25-acre "potential pad site" at the northeast corner.[14] Defendants' appraiser considered it "abundantly clear from the lease agreement language that the primary use of the property

---

[11] Purchase Agreement § 4.

[12] Pl.'s Appraisal at 1.

[13] *Id.*

[14] Defs.' Appraisal at 3, 5.

was the dealership and that no 'additional use' should degrade or minimize the value of that primary business operation."[15] Because the 2.5-acre pad site for the Royal Farms location was double the size of the site in the 2010 plat, and because building the 2.5-acre site "required demolition of the dealership improvements," Defendants' appraiser valued the 1.25-acre pad site as the Additional Space.[16]

Once the parties realized that the valuations were more than 5% divergent, they began negotiating a stipulation governing the process for engaging the third appraiser.[17] The negotiations failed, and the parties filed competing motions for entry of a second order governing the appraisal process.[18] Those cross-motions forced me to reevaluate the question of what constitutes Additional Space.

Defendants argued that the definition of Additional Space provided the third appraiser all necessary authority and guidance to complete the third appraisal, obviating the need for court intervention.[19] Because Defendants' argument spoke, in essence, to the subject-matter jurisdiction of this court to interpret the meaning of Additional Space, I

---

[15] Defs.' Appraisal at 4.

[16] *Id.*

[17] Pl.'s Mot. ¶ 13; Pl.'s Mot., Exs. C–D.

[18] *See* Dkt. 90.

[19] Defs.' Mot. at 6–9 ("The Purchase Agreement provides sufficient information regarding the appraisal process in which the parties must participate[.]").

considered it first, and concluded that interpreting the contractual term was a matter left to the court and not contractually delegated to the third appraiser.[20]

I then analyzed Plaintiff's argument that the size of the Additional Space had already been revealed through Plaintiff's motion for summary judgment. Ruling in Plaintiff's favor, I held that the Additional Space referred to the 2.5 acres as represented by Plaintiff.[21] I then gave Defendants two options.[22] One was to double Defendants' appraised value for the 1.25 acres. The other was to allow Defendants to commission a new appraisal of the 2.5 acres. I asked Defendants to report on their position "within five days."[23]

On the sixth business day after I issued the August 3, 2022 Letter Opinion, Defendants filed their Motions pursuant to Court of Chancery Rules 59(f), 59(e), and 60(b).[24]

Where a court has not issued a final order, neither the requirements for Rule 60(b) nor Rule 59(e) are met.[25] Because the August 3, 2022 Letter Opinion was interlocutory

---

[20] Aug. 3, 2022 Letter Op. at 6–10.

[21] *Id.* at 11–12.

[22] *Id.* at 12 (noting as well that there "may be others").

[23] *Id.*

[24] Defs.' Mot. for Reconsideration and to Reopen Disc.

[25] *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *2 (Del. Ch. May 11, 2001).

rather than final, neither Rule 59(e) nor 60(b) apply. Therefore, I only consider Defendants' Motions under the standard iterated in Court of Chancery Rule 59(f).

Under Rule 59(f), "[t]he Court will deny a motion for reargument 'unless the Court has overlooked a decision or principle of law that would have a controlling effect or the Court has misapprehended the law or the facts so that the outcome of the decision would be affected.'"[26] If a motion for reargument "merely rehashes arguments already made by the parties and considered by the Court" in rendering the decision for which reargument is sought, the motion must be denied.[27] On a motion for reargument, the movant bears a "heavy burden."[28]

Defendants advance two arguments under Rule 59(f). They first argue that I erred in the August 3, 2022 Letter Opinion by relying on the "Exploratory Resubdivision Plan" submitted as an exhibit to Plaintiff's Motion for Summary Judgment.[29] The plan, which Rommel executed in August 2017, described a 2.5-acre plot on which he proposed the construction of a new "Royal Farms Convenience store with Gas Station."[30] They next

---

[26] *Nguyen v. View, Inc.*, 2017 WL 3169051, at *2 (Del. Ch. July 26, 2017) (quoting *Stein v. Orloff*, 1985 WL 21136, at *2 (Del. Ch. Sept. 26, 1985)).

[27] *Wong v. USES Hldg. Corp.*, 2016 WL 1436594, at *1 (Del. Ch. Apr. 5, 2016).

[28] *In re ML/EQ Real Est. P'ship Litig.*, 2000 WL 364188, at *1 (Del. Ch. Mar. 22, 2000) (quoting *Arnold v. Soc'y for Savs. Bancorp*, 1995 WL 408769, at *1 (Del. Ch. June 30, 1995)).

[29] Dkt. 49, Ex. 17 to the Transmittal Aff. of Megan Ix Brison ("Brison Aff.").

[30] Aug. 3, 2022 Letter Op. at 12 (citing Brison Aff., Ex. 17 (Exploratory Resubdivision Plan) at PE001136, PE001138).

argue that I should reopen discovery to complete the factual record as to the meaning of Additional Space.[31]

Defendants' first argument does not work. Defendants argue that I erred by looking beyond the plain language of the Purchase Agreement to extrinsic evidence when interpreting the meaning of "Additional Space."[32] They further say that the record of extrinsic evidence was incomplete because I precluded discovery pending resolution of Plaintiff's motion for summary judgment.[33] They submitted a supplemental affidavit of Mr. Rommel asserting facts disputing the evidentiary weight of the Exploratory Resubdivision Plan.[34] Based on that affidavit, Defendants argue that the Exploratory Resubdivision Plan was a "non-final plan for the later development of the property and not any actual information regarding the operations of the dealership on the property in April 2018, the operative date of the appraisal, or afterwards."[35]

The problem with Defendants' argument is that "[r]eargument under Rule 59(f) is only available to re-examine the existing record,"[36] not to present new evidence, and not

---

[31] Defs.' Mot. for Reconsideration and to Reopen Disc. at 12 ("The Court made its ruling without allowing any discovery, although it relied itself on extrinsic parole evidence outside of the four corners of the Purchase Agreement.").

[32] *Id.* at 12–13.

[33] *Id.*

[34] Defs.' Mot. for Reconsideration and to Reopen Disc., Supplemental Aff. of David Rommel ("Rommel Aff.").

[35] Defs.' Mot. for Reconsideration and to Reopen Disc. at 9.

[36] *See Those Certain Underwriters at Lloyd's, London v. Natl's Installment Ins. Servs., Inc.*, 2008 WL 2133417, at *1 (Del. Ch. May 21, 2008).

to present evidence that does not qualify as "newly discovered."[37] Although it is true that I foreclosed wide-sweeping discovery into irrelevant issues while summary judgment was pending, nothing stopped Defendants from submitting the information in Rommel's latest supplemental affidavit when they filed opposition briefing. Defendants argued against summary judgment partially on the basis that defining Additional Space "requires extrinsic evidence as to what portion of the Property was not required for the dealership operations[.]"[38] When Defendants made that argument, they had a chance to dispute the evidentiary weight of the Exploratory Resubdivision Plan, which Plaintiff had attached as an exhibit to the summary judgment motion.[39] I tacitly rejected Defendants' argument.

Defendants' second argument fails for the same reason. Had Defendants raised disputes of material fact at the summary judgment phase, I might have given greater thought to their request for further discovery. But they did not, and I will not consider them now.

With their motions, Defendants alternatively requested sixty days to conduct a new appraisal. Although Defendants' request was untimely (because it was not "within five business days"[40]), it is granted, but on a truncated timeline given the delay caused by my

---

[37] *See* Ct. Ch. R. 60(b).

[38] Dkt. 71 (Def's Opposition to Pl.'s Mot. for Summ. J.) at 25.

[39] *See* Brison Aff., Ex. 17 (Exploratory Resubdivision Plan).

[40] *See* Aug. 3, 2022 Letter Op. at 12.

need to consider Defendants' motions. Defendants are granted thirty days to conduct a new appraisal.

In its opposition to the motions, Plaintiff requested fee-shifting in connection with "Defendants' obstreperous litigation conduct."[41] A cynic might agree with Plaintiff, given that the motions were quite broad and further delayed Plaintiff's requested relief. I am willing, however, to give Defendants the benefit of the doubt. Although Defendants' arguments ultimately fail, Plaintiff has not shown that Defendants have done more than take a zealous litigation posture. The request for fee-shifting is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:    All counsel of record (by *File & ServeXpress*)

---

[41] Pl.'s Opposition at 1, 13–14.